UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE FOMBY,

      Petitioner,

                                  Case No. 15-cv-12883

v.

                                  HON. MARK A. GOLDSMITH

SHANE PLACE,

      Respondent.
_____/

**OPINION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A
CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL
IN FORMA PAUPERIS**

      Petitioner Terrence Fomby filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), challenging his Wayne County Circuit Court conviction for first-degree murder, Mich. Comp. Laws § 750.316; armed robbery, Mich. Comp. Laws § 750.529; carjaking, Mich. Comp. Laws § 750.529a; and commission of a felony with a firearm, Mich. Comp. Laws § 750.227b. Petitioner was sentenced to life imprisonment for the murder conviction and lesser terms for his other offenses.

      The petition raises a single claim: Petitioner's Sixth Amendment right to a public trial was violated when the courtroom doors were locked during opening statements and closing arguments, and Petitioner's trial counsel was ineffective for failing to object to the closure. For the reasons stated below, the Court denies the petition, denies a certificate of appealability, and grants permission to proceed on appeal in forma pauperis.

## I.  BACKGROUND

      Petitioner's convictions arise out of the December 1, 2010, shooting death of Brian Stucky at a gas station in Detroit, Michigan. During the jury trial, the gas station attendant identified Petitioner as the shooter, and he identified Petitioner's uncle as his accomplice.

1

Petitioner was arrested about a month after the shooting in St. Paul, Minnesota. He falsely told officers that he had been in St. Paul for eight months.

Relevant to Petitioner's claim, the record indicates that the trial court ordered the courtroom doors closed and locked prior to opening statements. The court explained:

> [L]adies and gentlemen in the audience, were going to go ahead and lock the door right now because we want the jury to hear the parties opening statements of proceedings uninterrupted, okay? So if you want to leave, you're welcome to do so, otherwise, you're here until the conclusion of those statements.

6/13/2011 Trial Tr. at 118-119 (Dkt. 9-8).

Before closing arguments the trial judge again announced that the courtroom doors would be locked, that anyone who wanted to leave must do so now, and that it was impermissible to stand up during the arguments. 6/14/2011 Trial Tr. at 138 (Dkt. 9-9).

Petitioner's appellate brief filed in the Michigan Court of Appeals raised what now forms his habeas claim, as well as a sentencing claim not presented in this action. In denying relief with respect to Petitioner's habeas claim, the Michigan Court of Appeals found that the closure of the courtroom was a "partial" one:

> It is not absolutely clear from the record whether members of the public were present when the courtroom doors were closed and locked, but the public's presence can be inferred from the fact that the trial judge specifically addressed the "ladies and gentlemen in the audience" and "those of you who are in the courtroom." No one was removed from the courtroom during either the opening statements or closing arguments, and all members of the public who were then present were permitted to stay. The trial judge asked that if anyone needed to leave the courtroom that they do so before the beginning of the opening statements and closing arguments. The trial judge had the courtroom doors closed and locked so the attorneys could present their opening statements and closing arguments without interruption. Thus, the closure was only partial.

People v. Fomby, No. 305602, 2013 WL 1316734, at *2 (Mich. Ct. App. Apr. 2, 2013) (per

curiam).

The Michigan Court of Appeals went on to find that the trial court was only required to state a "substantial" reason for the partial closure, rather than a "compelling" reason required for a full closure.  Id.  It held that Petitioner's constitutional right to a public trial was not violated because the trial court articulated a substantial reason — allowing the parties to give their opening statements and closing arguments without interruption.  Id. at *3.  The Court also found that Petitioner was not denied the effective assistance of counsel.  It found that counsel's acquiescence to the closure may have been sound strategy because it benefitted both parties to make their arguments without interruption.  Id. at *3.  The court also found that Petitioner failed to demonstrate prejudice because there was not a reasonably probability that the result of the trial would have been different absent the partial closure.  Id. at *4.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claims as in the Michigan Court of Appeals.  The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court.  People v. Fomby, 846 N.W.2d 389 (Mich. 2014) (table).

## II.   STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

3

>Court of the United States; or

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of

4

the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III. ANALYSIS

**A. Merits**

5

Petitioner claims that the locking of the courtroom doors during opening statements and closing arguments violated his Sixth Amendment right to a public trial, and that his attorney's failure to object to the closure constituted ineffective assistance of counsel. Respondent asserts that the claim is procedurally barred from review because it was not preserved in the trial court.

As an initial matter, Respondent's procedural default defense does not raise a jurisdictional concern. See Trest v. Cain, 522 U.S. 87, 89 (1997). In many circumstances, a determination of whether a petitioner's claim is procedurally defaulted adds nothing but unnecessary complexity to a case. Babick v. Berghuis, 620 F.3d 571, 576 (6th Cir. 2010). Here, because an analysis of whether Petitioner's claim is procedurally defaulted is intertwined with Petitioner's argument that he was denied the effective assistance of counsel for failing to object to the closure of the courtroom, it is more efficient to simply proceed to the merits of Petitioner's claim.

The first step under § 2254(d) is to determine what constitutes "clearly established" Supreme Court law pertaining to Petitioner's claim. See Carey v. Musladin, 549 U.S. 70, 77 (2006). The Sixth Amendment guarantees that a criminal defendant "shall enjoy the right to a . . . public trial." U.S. Const. amend. VI. This right is made applicable to the States through the Fourteenth Amendment. See Waller v. Georgia, 467 U.S. 39, 46 (1984); Duncan v. Louisiana, 391 U.S. 145, 148-149 (1968).

In Waller, the Supreme Court held that the complete closure of the courtroom to members of the public during a pretrial hearing violated the defendant's Sixth Amendment right to a public proceeding. The Supreme Court identified four factors a court must consider, and findings a court must make, before excluding members of the public from a courtroom: (i) "the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced;" (ii) "the closure must be no broader than necessary to protect that interest;" (iii) "the

6

trial court must consider reasonable alternatives to closing the [proceeding];" and (iv) the trial court "must make findings adequate to support the closure." Id.

In Presley v. Georgia, 558 U.S. 209 (2010), the Supreme Court reaffirmed that a trial court must make the required findings under Waller before excluding all members of the public from the jury selection proceeding in a criminal trial. The Supreme Court held that the trial court violated the defendant's Sixth Amendment right to a public proceeding when it failed to consider alternatives to the removal of the single member of the public in attendance before the jury venire was brought in. Id. at 214-215.

The problem for Petitioner's claim is that both Waller and Presley — and indeed all Supreme Court cases on the subject — involve so-called "full closures," where all members of the public were barred from attending a court proceeding. Waller involved the complete exclusion of members of the public from a courtroom during a pretrial suppression hearing. Presely involved the full closure of the courtroom during jury selection. Similarly, Press-Enterprise v. Superior Court of California involved the complete exclusion of the press and the public from jury selection. 464 U.S. 501, 503-504 (1984). As the Sixth Circuit recently noted, "[n]early all federal courts of appeals . . . have distinguished between the total closure of proceedings and situations in which a courtroom is only partially closed to certain spectators." United States v. Simmons, 797 F.3d 409, 413 (6th Cir. 2015). In Simmons, for example, the test was modified by changing the first prong from "overriding interest" to "substantial reason." Id. at 414.

The fact that federal appellate courts have drawn a distinction between full and partial closures is significant for purposes of § 2254(d) review because, if federal appellate courts have modified the Waller test when a closure is only a partial one, then it necessarily follows that the

7

clearly established Supreme Court standard only applies to full closures. See Drummond v. Houk, 797 F.3d 400, 403 (6th Cir. 2015) ("There is no clearly established Supreme Court law as to how the rules in Waller apply in cases, like Petitioner's, where some spectators, but not all of them, were removed from the courtroom.").

The Michigan Court of Appeals characterized the closure that took place in Petitioner's case as a partial one. Fomby, 2013 WL 1316734, at *2. This determination is substantiated by the record. The trial court was obviously addressing members of the public seated in the courtroom when it announced that it was locking the courtroom doors. Those members of the public were not ordered out of the courtroom. Indeed, they were informed that they were required to stay for the entire portion of the proceedings if they chose to remain. Accordingly, the opening statements and closing arguments were not fully closed to members of the public, as in the relevant Supreme Court cases. Rather, at most, the proceedings were only partially closed to those members of the public who attempted to enter the courtroom while the doors were locked. Because the closure was, at most, a partial one, Petitioner's claim cannot be based on clearly established Supreme Court law. Drummond, 797 F.3d at 403.

Moreover, the fact that some federal courts have found that the circumstances presented here — the locking of the courtroom doors without removing members of the public already in attendance — do not amount to a closure at all. In United States v. Dugalic, 489 F. App'x 10 (6th Cir. 2012), a case strikingly similar to the present one, the Sixth Circuit found that the defendant was not denied his Sixth Amendment right to a public trial when the judge informed the spectators in the courtroom that once the closing arguments began, the doors would be locked to prevent the jury from being distracted by people coming in and out. The Sixth Circuit held that "the public was not denied access to the courtroom during closing arguments; it was merely

8

prevented from entering and leaving the courtroom while those arguments were going on." Id. at 19.

Similarly, in United States v. Scott, 564 F.3d 34 (1st Cir. 2009), the district court instructed the spectators in the courtroom that they would not be permitted to enter or leave the courtroom during the jury instructions. Id. at 37. The First Circuit held that the courtroom was not closed for purposes of the Sixth Amendment because the court "announced to the already-present spectators that they were welcome to stay in the courtroom but that they would not be permitted to leave during the charging of the jury, presumably to avoid distracting the jury during the 'lengthy' and complex charge." Id. The First Circuit reasoned that the district court "plainly had no intention of excluding the public," and no one was asked to leave. Id. at 37-38. The Second Circuit reached the same conclusion in Herring v. Meachum, 11 F.3d 374, 379 (2nd Cir. 1993). See also United States v. Flanders, 752 F.3d 1317, 1337 (11th Cir. 2014) (characterizing locking the courtroom doors during argument as a "partial closure" justified by substantial reasons).

The fact that several United States Courts of Appeal have denied relief in similar cases indicates that the result reached by the Michigan Court of Appeals here was not contrary to, or an unreasonable application of, clearly established Supreme Court law. See Carey v. Musladin, 549 U.S. 70, 76-77 (2006) (concluding the fact that "lower courts have diverged widely" on the question presented "[r]eflect[s] the lack of guidance from this Court" and supports a finding that "the state court's decision was not contrary to or an unreasonable application of clearly established federal law"); Price v. Vincent, 538 U.S. 634, 643 n.2 (2003) (citing lower federal and state court cases to show that the state court's adjudication was not objectively unreasonable).

9

The Court notes that, in Drummond, the Sixth Circuit found that, aside from its four-part test, Waller also stated a general rule — applying to any form of courtroom closure — that "a trial court must balance the interests for and against closure."  797 F.3d at 402 (citing Waller, 467 U.S. at 45).  To the extent that rule applies to the circumstances of this case, the Court finds that the trial court cited the substantial reason of enabling the jury hear the opening statements and closing arguments without distraction.  By deciding to allow the members of the public already present to stay, but prevent anyone else from entering or leaving during these portions of the proceedings, the trial court, in effect, balanced the interests involved.

Accordingly, the Court finds that Petitioner has failed to demonstrate entitlement to relief with respect to his public trial claim because it cannot be supported by clearly established Supreme Court law.

Next, Petitioner cannot demonstrate that he was denied the effective assistance of counsel due to his attorney's failure to raise this issue at trial.  To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland v. Washington, 466 U.S. 668, 687 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  In so doing, the defendant must overcome a "strong presumption" that counsel's behavior lies within the "wide range of reasonable professional assistance."  Id. at 689.  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  Id. at 689.

10

Second, a defendant must show that such performance prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a "reasonable probability" that the result of the proceeding would have been different but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

Petitioner has failed to show that trial counsel was ineffective for failing to object to the trial court locking the courtroom doors during opening statements and closing arguments. First, trial counsel's decision to acquiesce in the order may well have been a reasonable trial strategy for the purpose of ensuring that his arguments could be conveyed to the jury without interruption. As noted by the Michigan Court of Appeals, the order benefited both attorneys.

Moreover, even assuming that trial counsel was deficient for failing to object, Petitioner has failed to show that he was prejudiced. Indeed, it is difficult to image even, in principle, how Petitioner could demonstrate a reasonable probability that the result of his trial would have been more favorable had the trial court not locked the courtroom doors during opening statements and closing arguments.

Perhaps recognizing this problem, Petitioner argues that, because the denial of the right to a public trial is a structural error, prejudice should be presumed. See Pet. at 32-33. However, in every case that the Supreme Court has set forth the circumstances in which prejudice from counsel's deficient performance may be presumed, it has never held that an underlying structural error caused by counsel's performance is a reason for presuming prejudice; instead, only complete, actual, or constructive denial of counsel or a conflict of interest suffices. See Wright

v. Van Patten, 552 U.S. 120, 124-125 (2008). Indeed, presuming prejudice based upon counsel's failure to object to a structural error would be inconsistent with Strickland's unequivocal holding that, denial of counsel and "[c]onflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." Strickland, 466 U.S. at 693.

In the present case, Petitioner has failed to allege, let alone establish, that he was actually prejudiced by the locking of the courtroom doors. Therefore, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

Accordingly, the Court denies the petition.

**B. Certificate of Appealability and Proceeding In Forma Pauperis on Appeal**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the

12

applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

It is not reasonably debatable whether clearly established Supreme Court precedent applies to the locking of the courtroom doors during opening statements and closing arguments. The Court will, therefore, deny a certificate of appealability.

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant in forma pauperis status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. Id. at 764-765.

### IV. CONCLUSION

For the reasons stated above, the Court denies the petition (Dkt. 1), denies a certificate of appealability, and grants permission to proceed in forma pauperis on appeal.

SO ORDERED.

Dated: November 18, 2016               s/Mark A. Goldsmith
     Detroit, Michigan               MARK A. GOLDSMITH
                                                     United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 18, 2016.

                                              s/Karri Sandusky
                                              Case Manager